NOT FOR PUBLICATION
File Name: 04a0104n.06
Filed: November 18, 2004

NO. 03-4352

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EDWARD J. URBAN,

      Petitioner-Appellant,

v.

OHIO ADULT PAROLE AUTHORITY,

      Respondent-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

BEFORE:    SUHRHEINRICH and CLAY, Circuit Judges, and NIXON, District Judge.[*]

    **SUHRHEINRICH, J.,**  Petitioner-Appellant Edward Urban appeals from the order of the district court denying his petition for writ of habeas corpus brought under 28 U.S.C. § 2254.

**I.**

    The facts are amply presented in the Ohio Court of Appeals decision, *see State v. Urban*, No. 01AP-239, 2002 WL 464980 (Ohio Ct. App. March 28, 2002) (unpublished), and the magistrate judge's Report and Recommendation, adopted and affirmed by the district court on August 28, 2003, and are incorporated by reference here. Basically, Petitioner Edward Urban operated a family medical practice and was licensed to treat persons covered by Medicaid. He was charged with Medicaid fraud under Ohio Rev. Code § 2913.40(B) for performing unnecessary medical testing on

_____

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

his Medicaid patients in order to increase his income from his Medicaid billings, and for billing for services provided by an LPN that were not payable under Medicaid unless provided by a physician, registered nurse, or physician's assistant. Urban was also charged with tampering with evidence in violation of Ohio Rev. Code § 2921.12(A). Urban was convicted by a jury of two counts of felony Medicaid fraud, one misdemeanor fraud count, and two counts of tampering with evidence. Urban filed a motion for new trial, based in part on ineffective assistance of counsel. The trial court held an evidentiary hearing and subsequently denied the motion. Urban was originally sentenced on January 25, 2001, but was granted a modification of sentence on November 5, 2002.

Urban appealed. The Ohio Tenth Appellate District affirmed Urban's convictions on March 28, 2002. *See State v. Urban*, *supra*. On August 7, 2002, the Ohio Supreme Court declined to accept jurisdiction of Urban's appeal, with one judge dissenting. *See State v. Urban*, 772 N.E.2d 1204 (Ohio August 7, 2002) (unpublished table decision). On November 20, 2002, Urban filed this application for a writ of habeas corpus. On July 1, 2003, the magistrate judge issued a report and recommendation, recommending that Urban's petition be denied. Urban filed objections. On August 28, 2003, the district court adopted and affirmed the report and recommendation. This appeal followed.

**II.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, applies to this case. Under the AEDPA, an application for writ of habeas corpus by a state prisoner shall not be granted unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's legal decision is "contrary to" clearly established

federal law under § 2254(d)(1) if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court's decisions on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when the state court correctly identified the legal principle from the Supreme Court precedent but unreasonably applied that principle to the facts of the case before it. *Id.*

## A.

Urban contends that the district court erred in denying his application for writ of habeas corpus because he was denied effective assistance of trial counsel in numerous respects. To demonstrate ineffective assistance of counsel, a defendant must show that his attorney's conduct, "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In other words,

> [a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Both prongs must be met in order to secure relief. *Id.*

In *Strickland*, the Supreme Court further instructed that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

## 1.

-3-

First, Urban alleges that defense counsel repeatedly made disparaging remarks about him during the proceedings. Specifically, he argues that trial counsel was ineffective because he asked potential jurors if they hated doctors because of the way they treat nurses. He claims prejudice because a key prosecution witness, Cathy Fabian, was a former nurse in Urban's office, and the comments created the impression that Urban treated Fabian poorly.

However, as the magistrate judge noted, on cross-examination trial counsel elicited from Fabian that "she enjoyed working for [Urban], they had a professional and friendly relationship, petitioner allowed employees to use his condominium, he was committed to the community, and that most employees stayed in his employ for ten years." (R&R 21; J.A. 99). Thus, Urban has not established prejudice. *Cf. Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) (stating that "[a] strategic decision [on voir dire] cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness").

**2.**

Second, Urban complains that his trial counsel introduced damaging evidence during cross-examination of four state witnesses. The Ohio Court of Appeals summarized its conclusion as follows:

> Dr. Urban further faults trial counsel for bringing out, on cross-examination, accusations made against him that were not relevant to the trial issues. Although we recognize that plausible theories of defense can be forwarded for some of counsel's forays on cross-examination, and that clarifications or cautionary instructions were given in several instances, we agree that some of the questions, comments, and characterizations by defense counsel were questionable. Nonetheless, we conclude that defendant has not proven that it is reasonably probable that the verdict would have been different absent counsel's mistakes and omissions.

*Urban*, 2002 WL 464980, at \*12. The magistrate judge addressed the allegations pertaining to each witness individually, and likewise concluded that the *Strickland* standard was not met.

First, Urban contends that on cross-examination of state witness Dr. Peter Barnovsky, a doctor in Urban's office, trial counsel elicited highly prejudicial allegations that Barnovksy made to the grand jury. Specifically, trial counsel informed the jury of an accusation that Urban provided controlled substances to drug-addicted patients in exchange for their submission to unnecessary medical testing. Urban further complains that on redirect Barnovsky "spontaneously made another allegation" that Urban and his staff had discovered that some child patients were being sexually abused in their homes. Barnovsky then stated that Urban instructed his staff not to report the abuse because it would inconvenience his medical practice.

Again, we cannot say that the state court decision is an unreasonable application of *Strickland*. As the magistrate judge noted "other former employees of petitioner admitted on cross-examination that they enjoyed working for petitioner." *See, e.g. Transcript, 770-71, 507-08, 657*. "It therefore appears that trial counsel was attempting, by asking the questions referred to above, to demonstrate that Barnovsky was biased and his testimony incredible. Also, Barnovsky emphasized that he was not making any allegations regarding sexual abuse by petitioner or his staff." (R&R 27-28; J.A. 105-06). *Strickland* does not require perfect performance; and wide deference is accorded to trial counsel's strategic decisions. *See Strickland*, 466 U.S. at 689; *Campbell v. Coyle*, 260 F.3d 531, 551 (6th Cir. 2001). As indicated above, *Strickland* requires both cause and prejudice, and the state court's essential conclusion that Urban failed to establish the latter is not unreasonable.

Urban also objects to trial counsel's cross-examination of state witness Jane Lengel, a member of the Ohio Attorney General's Office Medicaid Fraud Control Unit. Urban claims that on

cross-examination, trial counsel elicited from Lengel that Urban's employees might have been conspiring with Urban. However, the record appears to reflect that trial counsel was pursuing a strategy of showing that the investigators from the medical board, including Lengel, launched a malicious investigation against Urban. Again, the state court's conclusion was not unreasonable.

Third, Urban points to the fact that during cross-examination of Cathy Fabian, trial counsel questioned her as to whether investigators asked her if Urban had a "two-way mirror in the examinations rooms where a woman would be examined and he could be on the other side." Again, as the magistrate judge held, "[v]iewed in context, it appears that defense counsel . . . was attempting to impugn the character of investigating officials." (R&R 23; J.A. 101).

Urban claims that counsel's cross-examination of state witness Joan Milo, a former patient, was objectionable because Milo conceded that Urban acted "inappropriately," and had improperly billed Milo's girlfriend for medical services that were never performed. However, we agree with the magistrate judge that "[d]efense counsel's cross-examination of Milo regarding the allegedly improper medical bill was plainly an attempt by counsel to portray Milo as biased, [*Transcript*], at 732-34, which was not an unreasonable strategy under the circumstances presented." (R&R 32; J.A. 110).

**3.**

Urban argues that trial counsel undermined his credibility by telling the jury that he was a defendant in a pending criminal prosecution. Again, we agree with the magistrate judge that although counsel's reference was not altogether clear, it also appeared that counsel was merely attempting to ensure that the jury panel was impartial. (*See* R&R 34; J.A. 112). In any event, even if error, it is quite a stretch to find prejudice under *Strickland*. Nor can Urban parlay the statement

into prejudice by combining it with trial counsel's opening statement regarding FBI agents visiting his office. The latter comment, as the magistrate judge held, was "an attempt to explain to the jury why Cathy Fabian, a nurse who had worked for petitioner for fourteen years, would be testifying for the prosecution." (R&R 34; J.A. 112). This contention is without merit.

**4.**

Urban contends that, while cross-examining a witness, trial counsel implied that Urban was guilty. On cross-examination of Dr. Debra Cooper, another physician and former employee of Urban, Cooper indicated that Urban told his staff members "if they did not order these tests that they would not make enough money to run this business and then nobody would get paid." *See Urban*, 2002 WL 464980, at *11. The Ohio Court of Appeals specifically addressed this claim and rejected it because trial counsel also elicited an admission from Cooper that, despite her concerns, she continued to work at the office and accepted a paycheck, and further admitted that she could not testify as to what is or is not Medicaid fraud, and that she did not have an opinion as to whether Urban's acts were criminal. *Id.* at 12. The Ohio Court of Appeals also rejected the contention because "an objection . . . (about alleged instructions to the staff) would not necessarily have been successful, given that the reported statement was made by Dr. Urban, a party, and that one could argue that the employees were speaking as agents of Dr. Urban." *Id.* Finally, the state court noted that the absence of such an objection did not affect the outcome of the case. *Id.* Urban does not, and cannot, attempt to show how the Ohio Court of Appeals' ruling is an unreasonable application of *Strickland.*

**5.**

Urban claims that trial counsel was unprepared for trial. In support, he references affidavits attached to his motion for a new trial indicating that trial counsel spent only a week preparing for the trial, and that one week before trial commenced, "trial counsel had absolutely no idea what his theory of defense would be." He also appears to complain that more witnesses should have been presented, although his argument is largely unspecific.

Contrary to Urban's assertion, the record reflects a defense "theme"–that Urban was the innocent victim of a corrupt investigation, penalized for being successful at delivering Medicaid care. Further, the failure to call witnesses does not automatically establish ineffectiveness. In any event, many of the witnesses Urban would have called were presented as part of the prosecution's case. In the absence of any demonstration of prejudice, Urban's claim under *Strickland* fails.

**6.**

Urban argues that trial counsel was ineffective because he failed to call witnesses, as promised during opening statements. Counsel also told the jury that he was going to have Urban explain what it was like to be under investigation for five years, but then never called Urban to testify in his own defense.

Again, Urban's claim fails. Counsel's claim that "I will get you ten doctors here and . . . [y]ou're going to have ten different opinions as to what the conditions are," was not a promise to deliver ten doctors but simply a reflection on the fact that doctors often disagree on diagnoses. As to the alleged failure of other witnesses, Urban offers no names and no details. Further, he had a second chance to call witnesses at his post-trial evidentiary hearing, with new counsel, and did not. As the magistrate judge likewise observed, "[a]s noted by the state appellate court, petitioner has

-8-

failed to demonstrate that any other experts would have provided exculpatory evidence." (R&R 41; J.A. 119).

**7.**

Urban complains that trial counsel was repeatedly admonished by the trial court to Urban's detriment. The Ohio Court of Appeals did not directly address this argument. However, as the magistrate judge noted, "petitioner refers to only three incidents, one of which took place outside the presence of the jury, and none of which were prejudicial to petitioner." (R&R 41; J.A. 119).

**8.**

Urban claims that trial counsel filed an incomprehensible motion for acquittal. However, the trial transcript reflects that trial counsel stated he was moving for judgment of acquittal under Rule 29, and that "In Rule 29 we all know the standard and language." The argument following this assertion attacked the sufficiency of the state's evidence, count by count. Trial counsel concluded by reiterating his reliance on Rule 29. This contention is without merit.

**9.**

Urban argues that counsel was ineffective in opening and closing arguments. Urban makes little argument other than to characterize trial counsel's opening statement as basically "unintelligible," and closing argument as "indecipherable." Like the magistrate judge, upon review of the record, we cannot agree that trial counsel's performance was inadequate or prejudicial to Urban. (R&R 42; J.A. 120). Counsel was undeniably colorful, but his arguments were also logical and forceful, setting forth his reasons why Urban was entitled to a favorable verdict. In any event, Urban's meager attempt to criticize counsel's performance does not approach a showing under *Strickland*, especially under the deferential standard of the AEDPA.

**10.**

Urban alleges that trial counsel failed to present available defenses as to both Medicaid fraud charges and the tampering with evidence charges. Urban claims that with regard to the tampering with evidence charges, he was prepared to testify that his first attorney instructed him that updating the patient files after they had been subpoenaed was appropriate. He also contends that four other individuals were prepared to testify that they heard counsel instruct Urban in such a fashion.

The Ohio Court of Appeals found as a matter of fact that:

> Mr. Bravo testified that he did not use the term "grooming" files, that it was "not a term that would be in my vocabulary and not a term that I would use." (Tr. 2204.) HHe [sic] explained that, if Dr. Urban used that term, it was in the context of making sure the right pieces of paper were in each file. Mr. Bravo testified that he never had a discussion with Dr. Urban about making changes or additions to existing documents. He stated unequivocally that he never advised Dr. Urban that he could groom files to make them "complete" by adding to office notes after the date of the visit.

> In regard to the allegation that staff members and Mrs. Urban heard him confirm that Dr. Urban could groom the files, Mr. Bravo testified that, on the occasions he was with Dr. Urban in the presence of staff members or Mrs. Urban, the document production was complete or nearly so. He noted, however, that Dr. Urban was very upset about the production of files and often talked with counsel about it. He noted that, to the extent he approved continued preparation of files, he meant adding the computer printouts and removing misfiled papers.

*Urban*, 2002 WL 464980, at *3. These facts are entitled to a presumption of correctness, *see* 28 U.S.C. § 2254(e), and Urban has done nothing to undermine that presumption.

The court then ruled on Urban's arguments in light of these facts as follows:

> First, we cannot agree that "no defense" was presented for Dr. Urban. Several members of Dr. Urban's staff, who might have been called in his defense, were called by the prosecution to establish parts of its case, and, accordingly, their beneficial testimony was elicited on cross-examination by defense counsel. Further, on appeal, Dr. Urban has not proved that trial counsel failed to call witnesses whose testimony would likely have resulted in his acquittal. For example, he asserts in his brief that he employed other temporary doctors who did not testify at trial and who,

therefore, apparently approved of his protocol and found that the tests were medically necessary. However, he did not present the trial court with an affidavit post-trial from any of these doctors to demonstrate that they had crucial testimony to offer. Even when the court invited the defense to provide a witness in the post-trial hearing, the defense did not put on a witness to help demonstrate that, if that witness had testified during trial, there would likely have been an acquittal.

Although Dr. Urban presented affidavits in the post-trial hearing from his wife and several employees regarding counsel's approval of "grooming" the files, we cannot conclude that the testimony of these witnesses, if they testified at trial, would likely have resulted in a different outcome as to evidence tampering. These witnesses did not appear at the hearing, and there was no cross-examination as to their fairly vague statements in the affidavits, which do not directly and specifically refute Mr. Bravo's testimony at hearing. Their statements were generally consistent with his statements that he approved adding some materials to the files and reviewing the files for misfiled papers. More importantly, accepting *arguendo* that effective counsel would have interviewed these witnesses and presented one or more of them during trial, we nevertheless conclude that the evidence against Dr. Urban was so overwhelming that a different result was not likely upon retrial.

*Id.* at \*12-13. Urban utterly fails to establish that the state court's rulings–that there was no cause, and if cause, no prejudice given the overwhelming amount of evidence–are an unreasonable application of *Strickland*. As the Respondent asserts, any testimony from Urban and his employees would have been refuted by Attorney Bravo's testimony that he never discussed the files with them; and therefore, defense counsel exercised sound trial strategy in avoiding such impeachment.

**11.**

Urban asserts that the foregoing examination demonstrates that the cumulative weight of trial counsel's errors was overwhelming and that he is entitled to relief under the "contrary to" clause of § 2254(d)(1). Contrary to his assertion, the "unreasonable application" clause applies to Urban's *Strickland* claim, and the state court's ruling was not unreasonable. The Ohio Court of Appeals held, and the record reflects, that "the evidence against Dr. Urban was so overwhelming that a

different result was not likely upon retrial." *Id.* Urban has not established how the rulings of the trial court or the Ohio Court of Appeals are an unreasonable application of *Strickland*.

**B.**

Urban also argues that his claim for relief is governed by the "contrary to" clause of 28 U.S.C. § 2254(d)(1) and that the Ohio Court of Appeals' rulings were contrary to clearly established federal law. As an initial matter, it should be noted that the Ohio Court of Appeals assessed Urban's ineffective assistance of trial counsel claim under two distinct standards twice, as part of Urban's direct appeal, and as part of the denial of Urban's motion for a new trial. The Ohio Court of Appeals expressly considered and rejected Urban's claim under two distinct standards of review.

**1.**

Urban contends that the Ohio Court of Appeals' decision denying his ineffective assistance claim is "contrary to" *Cuyler v. Sullivan*, 446 U.S. 335 (1980). He points to the state appellate court's comments that

> the trial court gave careful consideration to the overall fairness of the trial. For example, the trial court considered Dr. Urban's situation, which was not that of an uneducated defendant with a court-appointed counsel he did not choose. . . . We conclude that the trial court, in denying a new trial on grounds of ineffective assistance of counsel, reasonably considered the defendant's education, his experience with lawyers and legal matters, his ability to hire counsel of his choice, and his past exercise of the freedom to hire new counsel.

*Id.* at *14.

*Cuyler* stated that defendants who retain counsel are entitled to the same constitutional protections as those who are appointed counsel, *Cuyler*, 446 U.S. at 344-45, and further held that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at

-12-

trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.

*Cuyler* involved multiple representation. This case is therefore not "contrary to" *Cuyler*. *Cuyler* is also not relevant because Urban does not assert that his lawyer had an actual conflict of interest. Finally, the Ohio Court of Appeals did not reject Urban's ineffectiveness claim because he had retained counsel. In any event, the passage Urban cites in support of his argument addressed the denial of Urban's motion for a new trial, not his federal constitutional claim for ineffective assistance of counsel. Indeed, the Ohio Court of Appeals was careful to note in its opinion that "we have reviewed the question of ineffective assistance of counsel using two different standards of review," *Urban*, 2002 WL 464980, at *13, and that Urban had not only "not satisfied the two elements required" under *Strickland*, but also that the trial court did not abuse its discretion in denying the new trial motion. *Id.* In short, this contention is without merit.

**2.**

Urban also alleges that the Ohio Court of Appeals incorrectly rejected his ineffectiveness claim on the ground that Urban benefitted from the competent representation of his co-defendant's counsel. The Ohio Court of Appeals stated in relevant part that "[w]e agree that Mr. Merkle made objections and presented witnesses that benefitted Dr. Urban, and we conclude that the trial court, in considering the fairness and reliability of the trial, reasonably considered the overall assistance received by defendant during trial." *Urban*, 2002 WL 464980, at *14. Urban contends that this ruling directly contradicts clearly established federal law, namely *Von Moltke v. Gillies*, 332 U.S. 708 (1948), which states in part that "[t]he right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client." *Id.* at 725.

-13-

Urban is wrong.  In *Von Moltke*, the Supreme Court held that the petitioner had been deprived of her Sixth Amendment right to counsel because she was deprived altogether of the right to appointed counsel, and that the advice and counsel received from government representatives, FBI agent-attorneys, whose loyalty was to the government, did not suffice.  *Pension v. Ohio*, 488 U.S. 75 (1988), is also inapposite.  It held that a criminal defendant was entirely without the assistance of counsel on his first appeal as of right, after appointed counsel filed a motion for leave to withdraw but failed to comply with *Anders v. California*, 386 U.S. 738 (1984), and the court failed to conduct an independent analysis.

In any event, the state appellate court did not reject Urban's constitutional ineffectiveness claim simply because he received some benefit from the performance of codefendant Hatcher's attorney, and the appellate court did not consider the performance of Hatcher's attorney in lieu of his.  The court merely noted that, in the context of its review of the new trial motion, Urban derived some benefit from Hatcher's defense.  The state court decision is not "contrary to" federal law.

**3.**

Next, Urban contends that the Ohio Court of Appeals evaluated his ineffective assistance of counsel claim under a higher measure of proof than *Strickland* requires.  Urban alleges that the state court required him to demonstrate that, but for counsel's errors, the "outcome probably would have been different," rather than requiring him to prove that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Thus, Urban claims that the state appellate court applied a preponderance of the evidence standard, and therefore was contrary to clearly established federal law.

We reject this argument. The Supreme Court recently held that a state court's "occasional shorthand reference to [the *Strickland* prejudice standard] by use of the term 'probable' without the modifier may perhaps be imprecise," but it is not a repudiation of the *Strickland* standard, "contrary to" federal law. *Woodford v. Visciotti*, 537 U.S. 19, 23-24 (2002) (per curiam). The Supreme Court recently reversed the Sixth Circuit on these grounds. *See Holland v. Jackson,* 124 S. Ct. 2736 (2004) (per curiam) (holding that the Sixth Circuit erred in holding that the state court acted contrary to federal law by requiring proof of prejudice by a preponderance of the evidence rather than by a reasonable probability; noting that in *Visciotti*, the Court held that use of unadorned "probably" is permissible shorthand when complete *Strickland* standard is elsewhere cited). Although it did not quote *Strickland* and used slightly different terms, the Ohio Court of Appeals clearly applied the *Strickland* standard; it cited to the federal standard, including the correct pinpoint cite, *see State v. Urban*, 2002 WL 464980, at *10 (citing *Strickland*, 466 U.S. at 687), and it relied on *Ohio v. Bradley*, 538 N.E.2d 373, 380 (Ohio 1989), in which the Ohio Supreme Court quoted the *Strickland* standard in full, including the proper definition of reasonable probability.

## C.

Urban argues that his habeas application is governed by the "contrary to" clause of § 2254(d), which is not as demanding as the "unreasonable application" clause. As reflected above, we have analyzed various claims under both prongs of § 2254(d)(1), as appropriate. Further, Urban's argument that he is entitled to relief under pre-AEDPA standards is without merit. He makes a number of other related arguments in this section of his brief. We address only those that need further attention. Urban complains that his trial counsel was ineffective because he was not

called to the witness stand, because trial counsel did not hire an expert witness, and because counsel failed to introduce policy statements from the State Medical Board.

**1.**

Urban complains that he wished to testify at trial and that counsel erred in failing to call him testify in his own behalf. Urban claims that he could have explained how Attorney Bravo advised him to update his files, and how all the tests billed under Medicaid were medically necessary. He further alleges that, had he testified, there was a reasonable probability that the outcome would have been different. However, as the Ohio Court of Appeals determined,

> there were good reasons to refrain from calling Dr. Urban as a witness. The prosecutor pointed out during hearing on the motion for new trial that, if Dr. Urban had testified that Mr. Bravo told him it was acceptable to insert new material into the progress notes, Mr. Bravo would have contradicted it emphatically, creating a situation where defendant's former attorney essentially called him a liar, under oath. In addition, the prosecutor pointed out that retrospective justifications for some of the tests would not have refuted the central thrust of the prosecution's case, which was that unqualified employees routinely ordered tests under a written protocol prior to examination by temporary doctors, and that tests were thus performed and billed in the absence of findings of medical necessity. More importantly, the trial court noted that the prosecution had damaging evidence, a statement by Dr. Urban that could be viewed in the nature of a confession, which the prosecution could present to the jury only if Dr. Urban testified, to impeach him.

*Urban*, 2002 WL 464980, at *10. The Ohio Court of Appeals also noted that much of the allegedly "crucial evidence" came from other witnesses:

> For example, although Dr. Urban argues that he did not have the opportunity to explain the role of preventive testing in a holistic approach to medicine, defense counsel cross-examined witnesses about differing opinions on this approach, and obtained helpful admissions from several witnesses. Similarly, although Dr. Urban did not testify, the jury heard evidence that his attorney approved his updating of the subpoenaed files. For example, Barbara Goodhart testified that Dr. Urban was openly writing on the subpoenaed charts and also talked about it openly, making clear that he believed that his lawyer approved. In sum, defendant has not met his burden of demonstrating that trial counsel erred in failing to present him as a witness on his own behalf or demonstrate the requisite prejudice.

-16-

*Id.* The Ohio Court of Appeals' ruling that such decision was sound strategy is not an unreasonable application of *Strickland* and progeny.

Significantly, Urban does not contend that he was not informed of his right to testify, or that trial counsel refused to let him testify. Rather, his affidavit states in relevant part:

> The affiant, on the 1st day of trial, had not been advised if he was going to testify or not, who was going to testify on his behalf, or what the defense strategy was.

(J.A. 55). In other words, Urban's statement confirms that the decision not to have him testify was strategic. For the reasons discussed above, we hold that the Ohio Court of Appeals' determination that the strategic decision did not violate *Strickland* and progeny was not an unreasonable application of Supreme Court precedent.

**2.**

As for Urban's contention regarding policy statements, the Ohio Court of Appeals determined as follows:

> Dr. Urban also argues that his counsel was ineffective in failing to present exculpatory documents from the medical board. These documents, filed in December 2000 with the motion for new trial, are policy statements interpreting R.C. Chapter 4731, the "Medical Practice Act." In the first document, the board expressed its concern that physicians were signing insurance forms for payment of services they did not personally provide. The board stated that, if the doctor's certification did not match his actual activities, there had been a violation of the Medical Practice Act. The board further stated that, if a physician stated that a service was a medical necessity without personal knowledge allowing such certification, a Medical Practice Act violation had occurred. In the other policy statement, the board explained that performing a pelvic examination constituted the practice of medicine but that a physician could delegate "specific technical components" of the examination, such as obtaining a pap smear, "to nurses or physician's assistants if within their scope of practice." (Motion for New Trial, Exhibit 1A.)
>
> We note, first, that these statements were not interpreting the Medicaid laws under which Dr. Urban was billing ODHS, and, therefore, the statements were not

-17-

relevant to the accusation at trial, which was that Dr. Urban billed for Ms. Fabian's services using a Medicaid code for services provided by a registered nurse or physician's assistant, which he knew was untrue. Second, it is debatable whether the documents support Dr. Urban's innocence. On the contrary, his actions could be viewed as violating the policies. We find that trial counsel was not deficient in failing to present these documents as a defense to Medicaid fraud.

*Urban,* 2002 WL 464980, at *11. Urban has simply not demonstrated how this ruling is an

unreasonable application of *Strickland*.

**3.**

As to the alleged failure to retain an expert witness, the Ohio Court of Appeals ruled that

In addition, Dr. Urban argues that his trial counsel committed a serious error in failing to retain an expert to testify that all the tests billed to Medicaid were medically necessary. He asserts that an expert would have testified as to the medical necessity of the tests. We note, however, that, in the post-trial proceedings, when the trial court expressly invited defendant to bring in an expert witness, and gave an extension of time to obtain witnesses to support the motion for new trial, defendant presented no witness. In the time provided prior to the hearing, an expert could have reviewed two or three patient files selected by Dr. Urban, and testified as to the medical necessity for the tests, thus providing a sample of the kind of expert testimony that, Dr. Urban alleges, a diligent and prepared attorney would have presented at trial. However, no expert testified, and Dr. Urban's assertions that an expert would testify that the tests were necessary are speculative.

*Id.* Again, Urban does not show how the state court's decision is an unreasonable application of

*Strickland*.

**III.**

As the Ohio Court of Appeals concluded:

[E]ven though there were flaws in counsel's defense of Dr. Urban, defendant has not met his burden of proving that it was reasonably likely that there would have been a different result absent the errors. The testimonial evidence and documentary evidence were overwhelming in combination. Accordingly, we conclude the trial court did not err or abuse its discretion in denying the motion for new trial on the grounds that counsel was constitutionally ineffective. We also conclude, separately, upon independent review of the record, that defendant has not met his burden on appeal of demonstrating that the outcome of his trial would probably have been

different absent the errors and omissions by his trial counsel, considered in their totality.

*Urban,* 2002 WL 464980, at \*14. "To be sure, [Urban's] lawyer was no Aristotle or even Clarence Darrow." *Yarborough v. Gentry*, 540 U.S. 1, 7 (2003) (per curiam). However, the bottom line is that, even though trial counsel's performance was not stellar, Urban has not established prejudice. Our independent review of the record under the applicable habeas standards confirms that the Ohio Court of Appeals' decision is not an unreasonable application of clearly established federal law.[1]

As noted above, any remaining contentions are utterly without merit and do not warrant discussion.

## IV.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

[1]Urban includes a string citation of cases in which Colucci has been chastised for providing inadequate services to his clients. Furthermore, it should also be noted that on July 9, 2004, the Supreme Court of Ohio entered an interim remedial suspension against Mark S. Colucci, trial counsel, effective immediately, for the reason that he "has committed numerous violations of the Code of Professional Responsibility and that he poses a substantial threat of serious harm to his clients and the public." 7/09/2004 *Case Announcements*, 2004-Ohio-3599.

Even if, as Urban suggests, the recitation demonstrates that trial counsel has repeatedly disregarded his professional obligations to his clients, it does not *a fortiori* establish *Strickland* cause, let alone prejudice, here.