RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES A. DANNER,

          *Petitioner-Appellant,*

    *v.*

JOHN MOTLEY, Warden,

          *Respondent-Appellee.*

No. 04-5363

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 03-00065—Henry R. Wilhoit, Jr., District Judge.

Submitted: July 21, 2005

Decided and Filed: May 11, 2006

Before: GIBBONS and COOK, Circuit Judges; PHILLIPS, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Brian T. Judy, CABINET FOR HEALTH AND FAMILY SERVICE, OFFICE OF LEGAL SERVICES, Frankfort, Kentucky, for Appellee. James A. Danner, West Liberty, Kentucky, pro se.

_____

## OPINION

_____

    JULIA SMITH GIBBONS, Circuit Judge. James A. Danner was convicted in November 1996 in Kentucky state court on two counts of first degree sodomy and one count of first degree rape and was sentenced to twenty-four years imprisonment on each count to run concurrently. His conviction was affirmed by the Kentucky Supreme Court. On April 28, 2003, Danner filed a *pro se* petition for a writ of habeas corpus in United States District Court for the Eastern District of Kentucky. The district court denied the petition but granted a certificate of appealability on two issues. Danner now appeals. For the following reasons, we affirm the district court's decision to deny the writ of habeas corpus.

_____

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

# I.

Petitioner Danner was indicted on February 8, 1996, by a Boyd Circuit Court grand jury on two counts of first degree sodomy and one count of first degree rape. The charges stemmed out of Danner's sexual abuse of his daughter, Shonda. According to evidence presented at trial, Danner sexually abused her from 1986 to 1990 while she was between the ages of five and ten years old. By the time Danner was brought to trial, Shonda was fifteen years of age.

Because the Commonwealth felt that Shonda would have difficulty testifying in the presence of Danner, on October 30, 1996, two days prior to the commencement of trial, the prosecution made a motion pursuant to Kentucky Revised Statute § 421.350 to allow Shonda to testify via closed circuit television. Kentucky Revised Statute § 421.350 states:

> The court may, on the motion of the attorney for any party and upon a finding of compelling need, order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence the court finds would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys may question the child. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant.

Ky. Rev. Stat. § 421.350(2). The statute applies to prosecutions where "the act is alleged to have been committed against a child twelve (12) years of age or younger, and applies to the statements or testimony of that child or another child who is twelve (12) years of age or younger who witnesses one of the offenses included in this subsection." *Id.* § 421.350(1). The defense opposed the motion, arguing that (1) because Shonda was fifteen years of age at the time of the trial, she was too old to be covered by the statute, and (2) the prosecution had not made a strong enough showing of necessity pursuant to *Maryland v. Craig*, 497 U.S. 836 (1990), to make the testimony via closed circuit television constitutionally permissible.

The trial court conducted an *in camera* interview with Shonda in order to determine whether the compelling need required by § 421.250 existed to allow Shonda to testify via closed circuit television. Following the *in camera* interview, the trial court ruled that compelling need existed for the use of electronic equipment. In so finding, the trial court stated:

> The Court finds that due to factors which I cannot define but yet go much further than anxiety or nervousness, as referred to in the various cases that have been cited, that compelling need exists for the use of the electronic equipment. And although I'm not making this decision simply for the witness's convenience, or to prevent her from being nervous or anxious, as that no doubt happens to all witnesses, the Court is convinced that due to the nature of the testimony and the age of the witness that face-to-face arrangement would inhibit the witness to a degree that the jury's search for the truth would be clouded. The Court is strongly of the opinion that the electronic equipment . . . which operates in complete conformity with Kentucky Revised Statute 421.350 is sufficient to facilitate the presentation of evidence while at the same time preserving the defendant's rights to confront the Commonwealth's witnesses pursuant to the Sixth Amendment. So the compelling need is not based on convenience or comfort level of the witness so much as it is the need to be able to

disclose the testimony so that the jury itself can determine whether they want to accept or reject same or what weight should be given.

The case proceeded to trial on November 6, 1996. On November 8, 1996, the jury returned a verdict finding Danner guilty of both counts of first degree sodomy and one count of first degree rape. Danner was sentenced to twenty-four years of imprisonment on each count to run concurrently. Danner appealed his conviction, and the Kentucky Supreme Court affirmed his conviction on February 19, 1998. *Danner v. Commonwealth*, 963 S.W.2d 632 (Ky. 1998). The Supreme Court denied certiorari on November 16, 1998. *Danner v. Kentucky*, 525 U.S. 1010 (1998). Danner unsuccessfully pursued various forms of post-conviction relief in Kentucky state court, receiving his last denial of relief from the Kentucky Supreme Court on December 11, 2002.

On April 28, 2003, Danner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in United States District Court for the Eastern District of Kentucky. In the petition, he raised six claims: (1) the trial court erred in permitting the victim to testify via closed circuit television; (2) his Confrontation Clause rights under the Sixth Amendment were violated by the use of the closed circuit television procedure; (3) he received ineffective assistance of trial counsel due to counsel's failure to investigate his case or prepare a defense; (4) the trial court denied him a fair trial by denying his request for an expert; (5) the trial court erred in admitting character evidence which was used to impeach Danner; and (6) the trial court erred in admitting a witness's testimony that addressed the ultimate issue in the case. On November 18, 2003, a magistrate judge issued a report recommending that Danner's petition be denied. On March 9, 2004, the district court adopted the magistrate judge's recommendation and denied Danner's habeas petition in its entirety. The district court nonetheless granted a certificate of appealability on the following two issues: (1) whether the trial court erred in granting the Commonwealth's motion for the minor rape victim to testify via closed circuit television, and (2) whether such testimony violated the defendant's constitutional rights under the Confrontation Clause. On March 28, 2004, Danner filed a timely notice of appeal.

**II.**

The first issue on which a certificate of appealability was granted was whether the trial court erred in granting the Commonwealth's motion for the minor rape victim to testify via closed circuit television. On appeal, Danner argues that the prosecution did not make the proper showing pursuant to Kentucky Revised Statute § 421.350, and therefore, the trial court erred in granting the Commonwealth's motion. It is unnecessary for this court to engage in an inquiry into whether the trial court's ruling was proper under § 421.350, as the decision of the state court, even if erroneous under the Kentucky statute, is purely a matter of state law. Because errors of state law are not the concern of a federal court reviewing a habeas petition, we need not review the decision. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). As a result, we affirm the district court's denial of habeas relief on this issue.

The second issue on which a certificate of appealability was granted is whether the trial court's decision to allow the minor victim to testify via closed circuit television violated Danner's constitutional rights under the Confrontation Clause of the Sixth Amendment. Danner argues that the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not apply and that the standard of review we should employ on this claim is pre-AEDPA *de novo* review because no state court reviewed his constitutional challenge on the merits. We agree. The AEDPA standard of review applies only to "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). In this case, Danner objected to the use of closed circuit television for the victim's testimony on the ground that this method of testifying violated his constitutional right to confront his accuser pursuant to the Sixth Amendment. However,

the trial court did not review this claim. It concluded that the closed circuit television procedure did not violate the Sixth Amendment *per se*, but confined its analysis of whether to apply that procedure in this particular case to Kentucky state law. The Kentucky Supreme Court, in affirming Danner's conviction, examined only Kentucky state law in determining whether the procedure was proper. *Danner*, 963 S.W.2d at 633-34.

In reviewing Danner's habeas petition, the district court concluded that although Danner was "technically correct that [neither] the state trial court nor the Supreme Court of Kentucky specifically mentioned the Sixth Amendment," the state court's review was sufficient to be considered adjudicated on the merits for AEDPA purposes because the Kentucky cases that the state courts relied on in reviewing Danner's claim discussed the Sixth Amendment. Therefore, the district court reasoned, the Kentucky trial court as well as the Kentucky Supreme Court reviewed the constitutionality of the use of the closed circuit television procedure, albeit indirectly.

We cannot agree with this analysis. There is no indication in the trial court's comments that it examined Danner's Sixth Amendment claim. Nor is there evidence in the Kentucky Supreme Court's opinion that it considered the Sixth Amendment at all in ruling on Danner's claim. *See Danner*, 525 U.S. at 1010 (Scalia, J., dissenting from denial of cert.) ("[N]either the trial court nor the Supreme Court so much as mentioned the Sixth Amendment."). Any consideration of the Sixth Amendment contained within the state case law upon which the state courts relied is too attenuated to consider the Sixth Amendment claim to have been "adjudicated on the merits." 28 U.S.C. § 2254(d). Therefore, the AEDPA standard of review does not apply and we review Danner's constitutional challenge *de novo. See Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. Instead, this court reviews questions of law and mixed questions of law and fact de novo." (internal citation omitted)).

The Sixth Amendment guarantees to a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The right of confrontation, however, is not unlimited. "In sum, our precedents establish that the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Craig*, 497 U.S. at 849 (internal quotations and citations omitted) (emphasis in original). The Confrontation Clause, therefore, requires courts to balance the defendant's rights and society's interests. "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.[1]

In *Craig*, the Court upheld a Maryland law providing for testimony by child victims of sexual abuse via closed circuit television. In so finding, the court held that the state's asserted interest in "protecting children who are allegedly victims of child abuse," *id.* at 852, was sufficiently substantial to overcome a Confrontation Clause challenge provided that the court made case-specific findings as to the child's need for such protections. *Id.* at 853-55. Protection for children is not the only rationale for laws providing for remote testimony by child sex abuse victims, however. Another concern is the fear of the unreliability of the child's testimony. As Justice Blackmun stated in dissent in *Coy v. Iowa*, "[T]he fear and trauma associated with a child's testimony in front of the defendant have two serious identifiable consequences: They may cause psychological injury to the child, and they may so overwhelm the child as to prevent the possibility of effective testimony, thereby undermining the truth-finding function of the trial itself." 487 U.S. 1012, 1032 (1988); *see*

---

[1] The constitutionality of the closed circuit procedure used by the trial court is not an issue here, as the Supreme Court held an identical procedure constitutionally adequate in *Craig*. 497 U.S. at 852.

*also* Dorothy F. Marsil et al., *Child Witness Policy: Law Interfacing With Social Science*, 65 Law & Contemp. Probs. 209, 209 (2002) ("One problem confronting the courts is how to protect children from experiencing the psychological trauma resulting from a face-to-face confrontation with a defendant who may have physically harmed the child or threatened future harm to the child. Another concern is that this trauma may impair children's memory performance and their willingness to disclose the truth."); *State v. Sheppard*, 484 A.2d 1330 (N.J. Super. Ct. Law Div. 1984) (analyzing various child witness protection methods and the reasons for their passage); *State v. Bonello*, 554 A.2d 277, 280 (Conn. 1989) ("[T]he primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury the victim may suffer by testifying in the presence of the accused." (alterations and internal quotation marks omitted)). Empirical studies in the social science literature amply support the idea that the presence of the defendant may decrease the accuracy of a child's testimony. Marsil et al., 65 Law & Contemp. Probs. at 213-15 (reviewing literature); *see also Coy*, 487 U.S. at 1031-32 (Blackmun, J., dissenting) (reviewing literature).

The Supreme Court has explicitly ruled on only the psychological injury resulting from the "fear and trauma associated with a child's testimony." The Maryland statute at issue in *Craig* required the judge to determine whether in-person testimony would "result in the child suffering severe emotional distress such that the child cannot reasonably communicate." Md. Code Ann., Cts. & Jud. Proc.§ 9-102(a)(1)(ii). The Court founded its decision to uphold the statute on the state's interest in protecting children from psychological injury resulting from the trauma – an interest that was strongly supported in the legislative history. Though the statutory language is focused on the child's ability to communicate, the *Craig* Court noted that the Maryland statute "was specifically intended 'to safeguard the physical and psychological well-being of child victims by avoiding, or at least minimizing, the emotional trauma produced by testifying.'" 497 U.S. at 854 (quoting *Wildermuth v. State*, 530 A.2d 275, 286 (Md. 1987)). The Court upheld the statute, finding the state's interest to be important enough to overcome the minimal intrusions on the defendant's Confrontation Clause rights presented by the closed circuit procedure.

Despite the availability of the child-protection exception from the Confrontation Clause, the court in this case based its use of closed circuit camera testimony on the secondary, "truth-finding" aspect of Kentucky statute. "[C]ompelling need [for closed circuit testimony] is not based on convenience or comfort level of the witness so much as it is the need to be able to disclose the testimony so that the jury itself can determine whether they want to accept or reject same or what weight [it] should be given." State Tr. Trans. at 61, JA 173. We must determine, in light of *Craig*, whether the court properly relied on the state's interest in eliciting truthful testimony from alleged child victims of sexual abuse who suffer fear and trauma due to testimony in open court and whether the court's factual findings as to that interest were sufficient to support the use of the closed circuit procedure in this case.

The trial court's reliance on the truthfulness of the victim's testimony is supported by the language and purpose of the statute. Kentucky's statute tracks the Maryland statute almost verbatim, requiring the court to find "compelling need" before the closed circuit testimony procedure can be used. Ky. Rev. Stat. § 421.350(2). "Compelling need" is defined as "the substantial probability that the child would be unable to reasonably communicate because of serious emotional distress produced by the defendant's presence." *Id.* at § 421.350(5). Maryland and Kentucky thus share statutory language centered on the child's ability to communicate effectively. Like all such protections, the Kentucky statute was enacted due to victims' "fear and trauma" associated with testifying in open court:

> Our legislature, after extensive public hearings on the matter of child sex abuse and responding to a plea for witness protection, has accepted the philosophy that testifying in a formal court room atmosphere at a criminal trial before the defendant,

judge and jury can be one of the most intimidating and stressful aspects of the legal process for children.

*Commonwealth v. Willis*, 716 S.W.2d 224, 227 (Ky. 1986) (upholding § 421.350 against a Confrontation Clause challenge.). Having thus identified the fear and trauma associated with testifying as the moving force behind the statute, the *Willis* court identified both protection from psychological injury and concern about the reliability of testimony as valid rationales for upholding the statute, noting that "putting the child through the ordeal of testifying in open court may denigrate the reliability of her testimony." *Id.* at 230; *see also Commonwealth v. M.G.*, 75 S.W.3d 714, 721-22 (Ky. 2002) (reaffirming the policy basis for § 421.350 articulated in *Willis*). The Kentucky statute is thus supported by both of the relevant state interests identified by Justice Blackmun in *Coy*.

Though it did not base its holding on the state's interest in eliciting reliable testimony from child witnesses, the *Craig* court recognized this interest and indicated that reliability of testimony could be a potentially valid basis for child witness protection statutes:

> "[W]e have attempted to harmonize the goal of the [Confrontation] Clause – placing limits on the kind of evidence that may be received against a defendant – with a societal interest *in accurate factfinding*, which may require consideration of out-of-court statements." We have accordingly interpreted the Confrontation Clause in a manner sensitive to its purposes and sensitive to the necessities of trial and the adversary process.

*Craig*, 497 U.S. at 849 (quoting *Bourjaily v. United States*, 483 U.S. 171, 182 (1987) (alteration in original) (emphasis added)); *see also United States v. Yates*, 438 F.3d 1307, 1320 (11th Cir. 2006) (Tjoflat, J., dissenting) (en banc) ("It is beyond reproach that there is an important public policy in providing the fact-finder with crucial, reliable testimony and instituting procedures that ensure the integrity of the judicial process." (collecting cases)).[2] The *Craig* court continued, "there is evidence that [face-to-face] confrontation would in fact *disserve* the Confrontation Clause's truth-seeking goal." 497 U.S. at 857 (emphasis in original) (collecting sources). Because the interest in providing reliable testimony is a result of the same fear and trauma that give rise to the state's interest in protecting the witness from psychological injury, and because the state's interest in reliable testimony is an important one, the court's reliance on that interest does not constitute constitutional error so long as the court made the case-specific factual findings required by *Craig*.

The trial court found that the reliability of the victim's testimony in this case would be diminished as a result of the fear and trauma caused by a face-to-face confrontation with the defendant. In determining whether this harm was sufficient to overcome the constitutional preference for physical confrontation, we must follow the analysis in *Craig*, as modified for the state's asserted interest. *Craig* requires the trial court seeking to avoid psychological harm to find that: (1) the procedure is necessary to *protect the child's welfare*; (2) the child witness would be

---

[2] The Supreme Court has also identified the importance of reliable testimony as a compelling state interest that may outweigh a defendant's interests in other contexts. In *Martinez v. Court of Appeal*, for example, the Supreme Court held that "the overriding state interest in the fair and efficient administration of justice" could "outweigh an invasion of the appellant's interest in self-representation." 528 U.S. 152, 163 (2000) (denying constitutional right to self-representation on direct appeal of criminal conviction). Similarly, the Court held that denial of a military defendant's right to challenge a polygraph examination did not violate his Sixth Amendment right to present a defense: "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus 'bow to accommodate other legitimate interests in the criminal trial process.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (internal citations and footnote omitted). The Court continued: "State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." *Id.* at 309.

traumatized specifically by the presence of the defendant; and (3) the emotional distress the child witness would endure as a result of testifying is more than *de minimis*, i.e., more than mere nervousness or reluctance to testify. 497 U.S. at 855-56. Of these prongs, only the first is directed at the probability that testimony would cause psychological injury to the child witness; the second and third prongs, by contrast, require the court to find that the child's fear and trauma are genuine and caused by the defendant. Application of the *Craig* factors in the testimonial reliability context thus requires alteration of only the first prong. To satisfy *Craig* in this context, the trial court must therefore find that: (1) the procedure is necessary for the child to testify in a complete and truthful manner; (2) the child witness would be traumatized specifically by the presence of the defendant; and (3) the emotional distress the child witness would endure as a result of testifying is more than *de minimis*, *i.e.* mere nervousness or reluctance to testify.

The trial court made factual findings as to each of these prongs in deciding to allow the use of the closed circuit procedure. We review the trial court's factual findings as to these prongs for clear error. *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003); *Cardinal v. United States*, 954 F.2d 359, 362 (6th Cir. 1992). "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985)).

The court first determined that the procedure was necessary for the witness to testify effectively, finding "due to the nature of the testimony and the age of the witness that face-to-face arrangement would inhibit the witness to a degree that the jury's search for the truth would be clouded." The witness repeatedly, explicitly, and flatly denied that she could testify in open court, but also admitted that she could "probably try" to testify. The trial court was in the best position to weigh this testimony during the *in camera* interview. *See United States v. Cockett*, 330 F.3d 706, 715 (6th Cir. 2003); *United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995) ("Because the district court observes the trial first hand, it is in 'the best position to assess the impact of the testimony within the context of the proceedings.'" (quoting *United States v. Ushery*, 968 F.2d 575, 580 (6th Cir. 1992)). The court decided to credit the witness's protestations against testifying in open court, and we cannot say that this determination constituted clear error.

Having specifically determined that the victim's testimony could only be effectively produced by using the closed circuit procedure, the court determined that the defendant himself – and not the court – was the cause of the witness's difficulty. The victim responded to questions about why it would be difficult for her to testify by saying that she "couldn't get up in front of him," "just [didn't] want to be in front of him," "can't stand to look at him," "can't be near him," and "can't stand to be in a room with him." It is clear that the witness's discomfort was related specifically to the defendant rather than to the courtroom setting generally.

Finally, the court found that the witness's difficulty was more than *de minimis*. While it did not define the exact factors producing the difficulty, the court specifically concluded that the witness's feelings "go much further than anxiety or nervousness" such that there was a compelling need to use the procedure. The court's compelling need finding necessarily required more than a *de minimis* showing of distress. *Craig*, 497 U.S. at 856. In this case, the cumulative evidence, including the witness's emotional fragility and obvious distress regarding the prospect of testifying in Danner's presence, is sufficient to support the court's compelling need determination.

Together, the trial court's case-specific factual findings were sufficient to show that the witness was unable to testify due to her fear and trauma, as required by Kentucky law and *Craig*. Danner's Sixth Amendment confrontation rights were not violated.

**III.**

For the foregoing reasons, we affirm the denial of Danner's petition for a writ of habeas corpus.