*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

MORRIS JACKSON,

        *Petitioner-Appellant,*

     *v.*

KEITH SMITH, Warden,

        *Respondent-Appellee.*

No. 11-4146

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:09-cv-1467—Solomon Oliver, Jr., Chief District Judge.

Argued: June 19, 2013

Decided and Filed: March 7, 2014

Before: GILMAN, GRIFFIN, and WHITE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Peter A. Patterson, UNIVERSITY OF CINCINNATI APPELLATE CLINIC, Cincinnati, Ohio, for Appellant. Jerri L. Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Colter L. Paulson, SQUIRE SANDERS LLP, Cincinnati, Ohio, for Appellant. Jerri L. Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

     GRIFFIN, J., delivered the opinion of the court in which GILMAN, J., concurred, and WHITE, J., concurred in part. WHITE, J. (pp. 13–14), delivered a separate opinion concurring in part.

———————————

## OPINION

———————————

     GRIFFIN, Circuit Judge. Morris Jackson appeals the denial of his habeas corpus petition filed under 28 U.S.C. § 2254, in which he claims that the consecutive sentences imposed on his Ohio convictions for aggravated robbery and attempted kidnapping

violate the Double Jeopardy Clause's ban on multiple punishments for the same offense. We affirm.

I.

In November 2005, an Ohio jury convicted Jackson of aggravated robbery and attempted kidnapping, among other crimes. *See* Ohio Rev. Code §§ 2911.01(A)(1) (aggravated robbery), 2905.01(A)(2) (kidnapping), 2923.02(A) (attempt). The factual basis for these convictions involved an attempted bank robbery. Driving a stolen vehicle and wearing masks to cover their faces, Jackson and a man named Daniel Ivery arrived at the National City Bank in Canton, Ohio. The two men approached the bank but were confronted by an off-duty Canton police officer working security for the bank. The officer drew his weapon and yelled "police!" several times. Following an exchange of gunfire between Ivery and the officer, Jackson ran across the street towards a restaurant. When he reached the parking lot, he approached Sara Bineger, who was seated in the driver's seat of her vehicle, waiting to pull out of the lot. Jackson opened the car door, pointed a gun at Bineger, and told her to "scoot over." When she hesitated, Jackson tried to sit on her, at which point Bineger escaped through the passenger door. Jackson then drove away in Bineger's car.

At sentencing, Jackson argued that the offenses of aggravated robbery and attempted kidnapping were allied offenses of similar import under Ohio Revised Code § 2941.25 and asked the court to merge the kidnapping conviction into the robbery conviction. The court denied the request, finding the offenses to be of dissimilar import. Applying the Ohio Supreme Court's then-applicable framework laid out in *State v. Rance*, 710 N.E.2d 699 (Ohio 1999), *overruled by State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010), the trial court compared the statutory elements of the offenses in the abstract and found that "one could [commit] the offense of kidnapping without committing the offense of aggravated robbery and vice versa." The court imposed consecutive sentences of ten years on the aggravated robbery offense and five years on the attempted kidnapping offense. The Ohio Court of Appeals affirmed the trial court's rejection of Jackson's merger argument, relying on the unpublished decision in *State v.*

*McCoy*, No. 05-CA-29, 2006 WL 39100 (Ohio Ct. App. Jan. 5, 2006), which held that aggravated robbery and kidnapping were offenses of dissimilar import.  The Ohio Supreme Court denied leave to appeal.

Jackson petitioned for habeas relief in the district court.  As relevant here, Jackson claimed that punishing him for aggravated robbery and attempted kidnapping violated his rights under the federal Double Jeopardy Clause.  The district court denied relief on this claim but granted a certificate of appealability.  This timely appeal followed.

## II.

We first consider whether the heightened standards imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) govern Jackson's double jeopardy claim.  *See* 28 U.S.C. § 2254(d).  These standards apply to "any claim that was adjudicated on the merits in State Court proceedings."  *Id.*  By comparison, claims not "adjudicated on the merits" by the state court are given plenary review by a federal habeas court, even where AEDPA otherwise applies.  *See, e.g.*, *Jackson v. Houk*, 687 F.3d 723, 731 (6th Cir. 2012); *see also, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).  In past cases, determining whether a claim was "adjudicated on the merits" sometimes proved difficult, whether because the state court issued a summary denial, bereft of analysis, *see Harrington v. Richter,* 131 S. Ct. 770, 784 (2011)*,* because the state court explicitly addressed some of the federal claims presented but not others, *see Johnson v. Williams*, 133 S. Ct. 1088, 1093 (2013), or because the state court confined its analysis to state-law authorities, *see Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006).

In cases where the state court relied solely upon state authority, we previously held that the federal claim was not adjudicated on the merits and considered the claim de novo.  *See id.* (concluding that "[a]ny consideration of the Sixth Amendment contained within the state case law upon which the state courts relied is too attenuated to consider the Sixth Amendment claim to have been 'adjudicated on the merits'").  But the Supreme Court recently overruled our approach and held that "[w]hen a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784–85. And this rule applies, whether the state court denied relief summarily, *see id.*, expressly addressed some of the claims but not the one advanced on federal habeas review, *see Johnson*, 133 S. Ct. at 1093, or confined its analysis to state-law authorities, *see Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011) (holding that the state court's exclusive focus on Ohio's speedy-trial provisions in rejecting a federal speedy-trial claim failed to rebut the presumption of a merits adjudication).

Citing our earlier decision in *Danner*, Jackson contends that his double jeopardy claim, though fairly presented, was not adjudicated on the merits and therefore must be reviewed de novo. We disagree. Jackson is correct that the Ohio Court of Appeals' analysis of his double jeopardy claim was limited to an application of Ohio's allied offenses statute, Ohio Rev. Code § 2941.25, as interpreted by the Ohio Supreme Court in *State v. Rance*, 710 N.E.2d 699 (Ohio 1999). But that analysis is entirely dispositive of the federal double jeopardy claim, as the Ohio Supreme Court recognized in *Rance*. *Id.* at 705 (explaining that the allied offenses analysis "answers the constitutional and state statutory inquiries"). Therefore, the state court *necessarily* resolved the federal claim, despite not expressly saying so. *See Johnson*, 133 S. Ct. at 1098 ("Regardless of whether a California court would consider Williams' [state] and Sixth Amendment claims to be perfectly coextensive, the fact that these claims are so similar makes it unlikely that the California Court of Appeal decided one while overlooking the other."); *cf. Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (holding that an explained decision receives AEDPA deference even if the state court fails to cite—or is not even aware of—relevant Supreme Court precedent). Because the Ohio Court of Appeals adjudicated Jackson's federal claim "on the merits," we must review its decision under AEDPA's heightened standards.

Pursuant to these standards, eligibility for federal relief on a claim adjudicated on the merits requires the petitioner to demonstrate that the state court's decision

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[1]

## III.

Where, as here, § 2254(d)(1) governs a federal court's review of a state conviction, the applicable substantive law is limited to federal law "clearly established" by the holdings of Supreme Court decisions. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Identifying the requisite substantive law, therefore, is the "starting point for cases subject to § 2254(d)(1)." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam).

The Fifth Amendment provides in relevant part that no person shall "be twice put in jeopardy" for "the same offence." U.S. Const. amend. V. This guarantee, fundamental as it is to "the American scheme of justice," applies against the States by virtue of the Fourteenth Amendment's Due Process Clause. *See Benton v. Maryland*, 395 U.S. 784, 795 (1968). The Double Jeopardy Clause protects against "multiple punishments for the same offense," among other things. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). As the Court long ago recognized, "[i]f there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence." *Ex parte Lange*, 85 U.S. 163, 168 (1874).

### A.

The warden begins his defense of the district court's judgment with an argument that is inconsistent with well-settled precedent. According to the warden, "the test for determining whether two statutes constitute the 'same offense' for double jeopardy purposes was first developed in *Blockburger v. United States*, 284 U.S. 299 (1932)." He

---

[1]Eligibility also exists where the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Subparagraph (d)(2) is not applicable here.

then contends that the Ohio Court of Appeals "applied *Blockburger* to the particular statutory provisions at issue as required by United States Supreme Court precedent" and reached a decision that was neither contrary to, nor an unreasonable application of, the *Blockburger* test.

This argument is entirely inapposite. To begin, the Ohio courts did not apply *Blockburger*; they applied Ohio's allied offenses statute. Nor does the federal constitution require the state courts to apply *Blockburger* to resolve the double jeopardy claim. What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). In the federal system, it is presumed that "Congress ordinarily does not intend to punish the same offense under two different statutes." *Whalen v. United States*, 445 U.S. 684, 691 (1980). "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id.* at 692.

In *Blockburger*, the Court created a test for determining whether two federal statutory provisions really proscribe the "same offense" and thus whether Congress presumptively intended just one punishment: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. But this test, the Court has clarified, is merely a "rule of statutory construction," designed to assist courts in discerning Congress's intent; the Fifth (and Fourteenth) Amendments do not require the States to use it, and they are free to create their own tests, whether by statute or through judicial decisionmaking. Legislative intent is the touchstone; it, and not the *Blockburger* test, determines whether two offenses are the same and, if so, whether multiple punishments are nevertheless intended. *Albernaz v. United States*, 450 U.S. 333, 344

(1981) ("The question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed."); *see also Rance*, 710 N.E.2d at 705 ("In Ohio it is unnecessary to resort to the *Blockburger* test[.]").

The Court's decision in *Hunter*, 459 U.S. 359, illustrates the point. There, the Missouri Supreme Court, using the *Blockburger* test, concluded that Missouri statutes prohibiting robbery in the first degree and armed criminal action stemming from the robbery criminalized only one course of conduct. Based solely on that determination, the court found a "multiple punishments" violation, despite acknowledging "that the Missouri legislature had expressed its clear intent that a defendant should be subject to conviction and sentence under the armed criminal action statute in addition to any conviction and sentence for the underlying felony." *Id.* at 363–64. The United States Supreme Court reversed, explaining that *the legislature's intent*, not the results of the *Blockburger* test, controlled: "Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id.* at 368–69; *see also Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984) ("As should be evident from our decision in *Missouri v. Hunter*, . . . the *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature."). The warden makes the same mistake here by elevating *Blockburger* to the status of a constitutional requirement.

B.

The Ohio legislature has expressed its intention in regard to multiple punishments through a rule of general applicability. Ohio Revised Code § 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio courts apply *this statute*, not the *Blockburger* test, to ascertain the Ohio legislature's intent. *Rance*, 710 N.E.2d at 705; *see State v. Bickerstaff*, 461 N.E.2d 892, 896 n.1 (Ohio 1984) (explaining that the allied offenses statute "is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses"). The Ohio Supreme Court has interpreted the statute in various ways over the years. Three decisions are particularly relevant.

The first is *State v. Rance*, 710 N.E.2d 699 (Ohio 1999), where the Ohio Supreme Court held that when ascertaining whether two offenses are allied, a court must consider the statutory elements in the abstract, as opposed to considering the specific facts of the crime. *Id.* at 705. The court stated further that "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will [automatically] result in the commission of the other." *Id.* (internal quotation marks omitted). *Rance* governed at the time Jackson's case came before the Ohio Court of Appeals. The court applied the case in rejecting Jackson's claim.

The second relevant decision is *State v. Winn*, 905 N.E.2d 154 (Ohio 2009), decided after Jackson's convictions became final. There, using the *Rance* framework, the Ohio Supreme Court concluded that aggravated robbery and kidnapping—essentially the offenses at issue here, though Jackson was convicted of *attempted* kidnapping—are allied offenses of similar import. Comparing the elements of the offenses in the abstract, the court concluded that "the two offenses are so similar that the commission of one offense will necessarily result in commission of the other." *Id.* at 158. This result, the court stated, was "in keeping with 30 years of precedent." *Id.* at 158.

The third is *State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010), also decided after Jackson's convictions became final. In that case, the Ohio Supreme Court overruled

*Rance*, concluding that its approach was in tension with the language of the allied offense statute, was difficult to apply, offered almost no guidance to the lower courts, and sometimes yielded absurd results. The court created a new standard for ascertaining whether two crimes are allied offenses. Under this standard, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger . . . , the conduct of the accused must be considered." *Id.* at 1069. This new approach, the court concluded, flowed from the plain language in the allied offenses statute, which focuses on the defendant's conduct. *Id.* at 1070. Accordingly, "[i]f the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id.* If that is the case, "then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* If that too is the case, "then the offenses are allied offenses of similar import and will be merged." *Id.*

## C.

Jackson makes two arguments. First, he contends that using the new test for allied offenses set forth in *Johnson*, it is clear that the Ohio legislature never authorized multiple punishments for his convictions of aggravated robbery and attempted kidnapping. Next, he argues that even under the old *Rance* test, the Ohio Supreme Court's decision in *Winn* demonstrates that the Ohio legislature did not authorize cumulative punishments for the offenses. Under either theory, Jackson maintains, punishing him for both offenses "violate[s] clearly established Federal law."

We can dispense with extended analysis of Jackson's argument based on *Johnson*. After Jackson filed his opening brief, another panel of this court held, as a matter of Ohio law, that *Johnson* applies only in criminal cases that are not yet final, which is to say *prospectively*. *See Volpe v. Trim*, 708 F.3d 688, 701 (6th Cir. 2013) ("*Johnson* does not apply . . . to cases where the defendant has already exhausted her appellate remedies."). *Johnson* was decided *after* Jackson's convictions became final. Accordingly, *Volpe* forecloses Jackson's argument based upon *Johnson*. 6th Cir. R.

32.1(b); *see Walters v. Warden, Ross Corr. Inst.*, 521 F. App'x 375, 378 (6th Cir. 2013) ("*Volpe* is binding precedent on this panel.").

In his reply brief, Jackson acknowledges *Volpe* but emphasizes his *Winn*-based argument.  He contends that, unlike *Johnson*, *Winn* "only clarified and applied existing state law" when it held that kidnapping and aggravated robbery are allied offenses. Also, *Winn* stated that its holding was "consistent with 30 years of precedent," which means that the court's  determination in Jackson's case concerning the legislature's intent was wrong at the time his convictions became final.   Therefore, Jackson concludes, the state court "prescrib[ed] greater punishment than the legislature intended," in violation of the Double Jeopardy Clause. *See Hunter*, 459 U.S. at 366.

However, simply because the state court's assessment of its legislature's intent was wrong does not mean that Jackson is eligible for federal habeas relief.  The Supreme Court has made clear that the *only* question that matters under § 2254(d)(1) is "whether [the] state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *see Richter*, 131 S. Ct. at 786.  The Ohio Court of Appeals' decision is neither.  We might have a different result if the state court "had said that legislative intent is irrelevant to the double jeopardy analysis, or that although the [Ohio] legislature clearly had not intended for the two crimes to be punished cumulatively, the consecutive sentences imposed on [Jackson] were nonetheless acceptable despite the Double Jeopardy Clause." *McCloud v. Deppisch*, 409 F.3d 869, 876 (7th Cir. 2005).  For such statements would be plainly "contrary to" clearly established federal law that says the legislature's intent controls. *See Bell v. Cone*, 535 U.S. 685, 694 (2002) ("A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases." (citing *Williams*, 529 U.S. at 405–06)); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005) (allowing habeas relief if the state court "applies a rule that *contradicts* the governing law set forth in our cases" (emphasis added)).  But that is not our case.  At worst, the state court incorrectly applied Ohio's

allied offenses statute to determine the legislature's intent.**2** Habeas relief, especially when circumscribed by § 2254(d)(1), is not available for such alleged errors.

Furthermore, our "review under § 2254(d)(1) focuses on what a state court knew and did," *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011), and not simply on whether (upon plenary review, save with respect to factual determinations) the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a); *see Williams v. Taylor*, 529 U.S. 362, 400 (2000) (O'Connor, J., concurring) (describing the "independent" nature of federal habeas review before AEDPA); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (stating that federal habeas petitioners receive "plenary review of their constitutional claims"). With the focus correctly on what the Ohio Court of Appeals actually *did* in this matter—it discerned the Ohio legislature's intent by applying Ohio's allied offenses statute—there can be no doubt that its decision falls outside § 2254(d)(1)'s narrow exceptions to the bar on federal habeas relief, thus rendering Jackson ineligible for relief.

In *Volpe*, it is true, we stated in dicta that nothing would prevent the "application of *Johnson* in habeas review if the Ohio Supreme Court declares that its new test for allied offenses applies in the post-conviction context." 708 F.3d at 704 n.3. If that is so, then why not apply *Winn* on habeas review, provided the decision—as we so far have assumed—sets forth the correct assessment of the legislature's intent at the time of Jackson's direct review? The reason lies in § 2254(d)(1), as we have explained. In *Volpe*, although we acknowledged at the outset that § 2254(d)(1) applied, we conducted our analysis de novo, as if it did not apply. Finding no constitutional violation, we had no need to answer the question under § 2254(d)(1) and therefore never addressed it. This is a common way of addressing habeas claims when AEDPA applies. *See, e.g.*, *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010); *Knowles v. Mirzayance*, 556 U.S. 111, 128 (2009); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). We presumably could have decided *Volpe* by first considering the § 2254(d)(1) question, but instead decided

---

**2**Nor do we see any way in which a state court could "unreasonably apply" these clearly established rules and thereby satisfy § 2254(d)(1)'s other exception to the bar on habeas relief.

to consider the claim de novo.  We take a different route today.**3** *See Lockyer*, 538 U.S. at 71 ("AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1).").  Therefore, our dicta in *Volpe* does not help Jackson.

Jackson also asks that we certify to the Ohio Supreme Court the question whether *Winn* applies to a conviction that is already final.  But that misses the point.  We have so far assumed that Ohio law is as Jackson says it is—that *Winn* stated the Ohio legislature's intent at the time his conviction became final.  Whether Jackson's position and our assumption is correct (which is precisely what certification would tell us), habeas relief in the face of § 2254(d)(1) would still be unwarranted, given the lack of a state-court decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law."

IV.

For these reasons, we affirm the judgment of the district court.

---

**3***Fiore v. White*, 531 U.S. 225 (2001) (per curiam), does not require a different result.  Although § 2254(d)(1) potentially governed the petitioner's due-process claim, the Third Circuit denied relief using plenary review, and the Supreme Court heard the case in the same posture.

―――――――――――――――

**CONCURRENCE IN PART**

―――――――――――――――

HELENE N. WHITE, Circuit Judge.  Concurring in part.  I agree that the question whether double punishment for aggravated robbery and attempted kidnapping violates the federal double jeopardy protection is answered by reference to the Ohio legislature's intent, and that the Ohio legislature's intent is to be determined by the Ohio Supreme Court.  I also agree that AEDPA circumscribes our analysis.  However, I do not agree that habeas relief in this context depends on the state court's direct statement that although the state legislature did not intend double punishment, it is nevertheless permissible, as the majority seems to hold in paraphrasing the language of *McCloud v Deppisch*, 409 F.3d 869, 876 (7ᵗʰ Cir. 2005).  If it were clear that *State v Winn*, 905 N.E.2d 154 (Ohio 2009), expressed the Ohio Supreme Court's interpretation of the Ohio legislature's intent regarding whether aggravated robbery and attempted kidnapping are allied offenses of similar import as of the time Jackson's direct appeal was decided, and if it were clear that the Ohio courts determined that Jackson had committed both offenses with the same animus, I would conclude that the Ohio court decision is contrary to clearly established federal law in that it would be clear that the legislature did not intend double punishment be permitted by the Ohio court.

It is not clear that *Winn* simply stated the law as it always had been.  In *Volpe v. Trim*, 708 F.3d 688 (6ᵗʰ Cir. 2013), we rejected the argument that Ohio Rev. Code § 2941.25 has always had the same meaning and therefore if *State v. Rance*, 710 N.E.2d 699 (Ohio 1999), incorrectly interpreted the statute, as the Ohio Supreme Court held in *State v. Johnson*, 942 N.E.2d 1061, 1062 (Ohio 2010), then Volpe's constitutional right to be free from double jeopardy was violated when she was doubly punished where the legislature did not so intend.  We held instead that the Ohio legislature left it to the Ohio Supreme Court to give meaning to the term "allied offenses of similar import," and the meaning ascribed to that phrase by the court has changed over time.  *Volpe*, 708 F.3d at 702.  Here, although the *Winn* court stated that its decision "was in keeping with 30

years of precedent," *Winn*, 905 N.E.2d at 158, the cases cited by the court were primarily pre-*Rance* cases, and none analyzed the elements of kidnapping and aggravated robbery to determine whether they were allied offenses of similar import.  When *Winn* is compared to *Rance* and the cases leading up to *Winn*, it cannot be said that *Winn* clearly stated the Ohio Supreme Court's view of the applicability of § 2941.25 to aggravated robbery and kidnapping at the time Jackson's direct appeal was decided.

Additionally, § 2941.25 also asks the question whether the defendant committed both offenses with the same animus.  In *Winn*, the court expressly stated that it was not contested that Winn did not have a separate animus for the two offenses.  *Winn*, 905 N.E.2d at 157.  Here, although the Ohio Court of Appeals followed *State v McCoy*, No. 05-CA-29, 2006 WL 39100 (Ohio Ct. App. 5th Dist. Jan. 5, 2006), a case that held that aggravated robbery and kidnapping are not allied offenses of similar import, the sentencing court addressed the specifics of Jackson's conduct and determined that if Jackson had been successful in the kidnapping, the victim would have remained in the car as Jackson fled from the area.  The animus involved in carjacking the victim's car can certainly be seen as separate from the animus involved in attempting to take the victim away with the car.

Because the decision on Jackson's appeal was not contrary to, and did not involve an unreasonable application of, federal double jeopardy law, I concur in the affirmance of the denial of Jackson's habeas petition.