NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0585n.06

No. 16-3047

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Oct 31, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOHN ANDERSON RANKIN, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: CLAY, KETHLEDGE, and DONALD, Circuit Judges.

KETHLEDGE, Circuit Judge. A grand jury charged John Rankin with seventeen counts of violating federal tax laws. Rankin moved to dismiss, arguing that this prosecution violated the Double Jeopardy Clause. Rankin also moved for discovery in support of his double-jeopardy claim. The district court denied both motions. We affirm.

I.

In 2001, Rankin became the majority shareholder and president of a closely held software corporation, Connectivity Systems, Incorporated. Rankin also owned several hospitality businesses—including bars, restaurants, and movie theaters—that consistently lost money. Rankin began transferring hundreds of thousands of dollars from Connectivity to his failing hospitality businesses each year. Soon Connectivity began having trouble paying its employees and creditors. Under Rankin's control, Connectivity eventually stopped generating financial statements and filing corporate tax returns.

Edward Franks, a minority shareholder of Connectivity, sued Rankin in state court. Franks argued that Rankin had breached his fiduciary duties by self-dealing and failing to keep accurate accounts. The state trial court agreed and issued a preliminary injunction to "keep a bad situation from becoming fatal to the business." As part of the order, the court prohibited Rankin from receiving any pay, but required him to continue serving as Connectivity's president. Rankin appealed the injunction. The Ohio Court of Appeals held that requiring Rankin to serve as president without pay violated the Thirteenth Amendment's prohibition on involuntary servitude. *Franks v. Rankin*, Nos. 11AP-934, 11AP-962, 2012 WL 1531031, at *14-15 (Ohio Ct. App. May 1, 2012).

More than three years later, a grand jury indicted Rankin for failing to withhold taxes in violation of 26 U.S.C. § 7202, willfully making false declarations on federal income tax returns in violation of 26 U.S.C. § 7206(1), and willfully misleading and obstructing IRS agents in violation of 26 U.S.C. § 7212(a). Rankin filed a motion to dismiss on double-jeopardy grounds, arguing that the alleged imposition of involuntary servitude in *Franks* itself amounted to criminal jeopardy and thus precluded this prosecution. He also moved for discovery in support of his motion to dismiss. The district court denied both motions. This appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. *See Abney v. United States*, 431 U.S. 651, 658-63 (1977).

A.

We review de novo the district court's denial of Rankin's motion to dismiss this case on double-jeopardy grounds. *United States v. Mardis*, 600 F.3d 693, 696 (6th Cir. 2010).

Rankin argues that this federal tax prosecution violates the Double Jeopardy Clause because it involves the "same offense" as *Franks*, a state civil case; and, in Rankin's view, *Franks* already punished him criminally for that offense. The Double Jeopardy Clause prohibits the government from putting a person "in jeopardy of life or limb" twice for the "same offense." U.S. Const. amend. V. Offenses are not the same when, looking at their statutory elements, they each "require[] proof of a fact which the other does not." *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *United States v. Evans*, 951 F.2d 729, 732-33 (6th Cir. 1991). Although here we could affirm the district court on multiple grounds, the simplest is that the federal tax charges in this prosecution are not the "same" as the state fiduciary-duty claims in *Franks*.

In Ohio, a fiduciary-duty claim has three basic elements: the existence of a fiduciary duty, the breach of that duty, and harm to the plaintiff. *Wells Fargo Bank, N.A. v. Sessley*, 935 N.E.2d 70, 83 (Ohio Ct. App. 2010). A minority shareholder in a closely held corporation, like the plaintiff in *Franks*, must show specifically that a controlling shareholder misused corporate power for personal benefit at the minority's expense. *See Crosby v. Beam*, 548 N.E.2d 217, 220-21 (Ohio 1989).

The charges in this prosecution are completely different. The grand jury charged Rankin with tax crimes under three provisions of the Internal Revenue Code, and the government must prove each beyond a reasonable doubt. First, on the charge of failing to withhold taxes, the government must prove that Rankin willfully failed "to collect or truthfully account for and pay

over" taxes imposed by the Internal Revenue Code. 26 U.S.C. § 7202. Second, on the charge of falsifying tax returns, the government must prove that Rankin willfully made false and material statements on federal income tax returns that he signed under penalty of perjury. 26 U.S.C. § 7206(1). Third, on the charge of obstructing the IRS, the government must prove that Rankin intimidated or impeded the IRS "corruptly or by force or threats of force." 26 U.S.C. § 7212(a). The plaintiff in *Franks* did not need to prove any of these elements. And the government here does not need to prove that Rankin was a majority shareholder of a closely held corporation or that he violated his fiduciary duties. The "offenses" in *Franks* and this prosecution are not the "same" because each has elements the other does not. *See Jackson*, 745 F.3d at 211. Thus, this prosecution does not violate the Double Jeopardy Clause. The district court properly denied Rankin's motion to dismiss.

## B.

Rankin also argues that the district court erred by denying his motion for limited discovery in support of his double-jeopardy claim. We review the denial of a discovery request for abuse of discretion. *See In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014). "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant[.]" *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 862 (6th Cir. 2005) (citation omitted). Here, Rankin asked to review grand-jury testimony, see IRS notes and reports, and depose ten people. But nothing Rankin seeks could save his double-jeopardy claim. The fiduciary-duty claims in *Franks* did not involve the "same offense[s]" as those charged in this prosecution, so the Double Jeopardy Clause does not apply. *See* U.S. Const. amend. V. Any discovery would be pointless.

Thus, the district court did not abuse its discretion in denying Rankin's motion. *See Dairy Farmers of Am., Inc.*, 426 F.3d at 862.

The district court's judgment is affirmed.

**CLAY, Circuit Judge, concurring.** I agree with the majority that the district court's order denying Defendant John Rankin's motion to dismiss must be affirmed. I write separately to address two issues that were raised on appeal by Defendant which could benefit from further explanation not provided by the majority's opinion. The first issue is whether the unconstitutional involuntary servitude provision in the state trial court's order turned the state civil action into a criminal one; and the second issue is whether the dual sovereignty doctrine applies to bar the instant federal prosecution.

With regard to the first issue, Defendant argues that the involuntary servitude provision in the state trial court order constituted a criminal punishment which precludes the instant federal tax prosecution.

The Thirteenth Amendment states, in pertinent part, as follows:

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

U.S. Const. amend. XIII.

It should first be mentioned that "it will not be possible to determine whether the Double Jeopardy Clause is violated until a defendant has proceeded through a trial to judgment" because "a court must also look at the 'sanction actually imposed' to determine whether the Double Jeopardy Clause is implicated." *Hudson v. United States*, 522 U.S. 93, 102 (1997). Defendant was not required to serve as president of CSI without pay because the provision of the trial court order at issue was held unconstitutional. Therefore, the involuntary servitude sanction was not actually imposed. Even if it was imposed, the Double Jeopardy Clause has yet to be implicated because Defendant has not gone to trial in the federal tax prosecution action, and his punishment in the federal case has yet to be determined.

It should next be noted that "[u]nless th[e] sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable." *Helvering v. Mitchell*, 303 U.S. 391, 398-99 (1938). The preliminary injunction order states in pertinent part that "CSI . . . shall pay no further salary . . . to [Defendant]" and Defendant "shall remain corporate President and may advise the interim Board on business matters before them as he and they see fit." (R. 19, Preliminary Injunction Order, Sealed Ex. H, PageID# 739-40.) Plaintiff asserts that the trial court judge did not intend to punish Defendant; rather, he attempted to maintain the status quo by recognizing the precarious financial situation CSI was in and acknowledging the benefits Defendant's advice would have on the new CSI board if he remained president. Plaintiff is correct in arguing that the provision of the order requiring Defendant to work without pay was not meant as a criminal punishment. Defendant cites *Hudson v. United States*, 522 U.S. 93 (1997), *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), and *United States v. Kozminski*, 487 U.S. 931 (1988) to illustrate that the state trial court order imposed involuntary servitude, and by extension, a criminal punishment, which implicates the Double Jeopardy Clause and prohibits the instant tax prosecution. These cases do not support Defendant's contention.

In *Hudson*, defendant bank officers challenged an indictment charging them with misapplication of bank funds, for which monetary penalties and occupational debarment had previously been administratively imposed by the Office of Comptroller of Currency ("OCC") for essentially the same conduct. 522 U.S. at 95. The *Hudson* Court stated that "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Id*. at 99 (citation omitted). A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the

other." *Id*. (citation and internal quotation marks omitted). The Supreme Court ultimately held, among other things, that the Double Jeopardy Clause protects only against the imposition of multiple *criminal* punishments for the *same offense*, and that the administrative penalties imposed by the OCC were intended to be civil penalties by the legislature and were not so punitive in effect as to render them criminal for double jeopardy purposes. *Id*. at 99-104.

Defendant's "punishment" was arguably civil in nature as it was contained in a preliminary injunction order meant to preserve the status quo pending final determination of the state matter. *See Davis v. Widman*, 184 Ohio App. 3d 705, 2009-Ohio-5430, 922 N.E.2d 272, 284 (Ohio App. 2009) (noting how the purpose of a preliminary injunction is to preserve the status quo of the parties pending a decision on the merits) (citation and internal quotation marks omitted). Defendant argues that the provision did not maintain the status quo because it removed his ability to obtain income from CSI and forbade him from finding work elsewhere. I am not persuaded by Defendant's argument because (1) the order preserved what funds CSI had left after Defendant had fraudulently transferred millions of dollars out of the CSI fund to cover losses in his other businesses, and (2) the order did not forbid Defendant from seeking employment elsewhere inasmuch as it ordered that he "shall" remain president and "may" advise on business matters. It did not forbid him from working elsewhere. Similar to the Supreme Court's holding in *Hudson*, the punishment here was not criminal.

In *Mendoza-Martinez*, the Supreme Court was not faced with a double jeopardy issue. Rather, the issue was whether federal statutes that divested a person of United States citizenship if he or she left the country during a time of war as punishment were unconstitutional without affording that person procedural safeguards guaranteed by the Fifth and Sixth Amendments. 372 U.S. at 146-48. Thus, that case is inapposite to the matter at hand. In *Kozminksi*, the

defendants were challenging their criminal convictions for conspiracy to hold, and actually holding, mentally challenged victims in involuntary servitude. The defendants forced, by physical and mental coercion, the victims to work seven days a week, for up to 17 hours per day, for little or no pay while forcing them to live in squalid conditions without adequate nutrition, housing, clothing, or medical care. 487 U.S. at 934-36. The issue in *Kozminksi* was whether involuntary servitude required the use of physical or legal coercion, and the Supreme Court held that it did. *Id*. at 943-44.

The cases Defendant cites do not support his contention that the unconstitutional provision in the state trial court order converted the state civil action between private parties into a criminal prosecution by the State of Ohio. While it is arguable that the state trial court order was a form of legal coercion, and by extension, involuntary servitude, this by itself does not save Defendant's Double Jeopardy claim.

With regard to the second issue, Defendant contends that the dual sovereignty doctrine is inapplicable and that the government is barred from bringing the federal tax prosecution because the state court trial judge and the federal government both derive their authority to punish Defendant from the Thirteenth Amendment.

"The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government." *Heath v. Alabama*, 474 U.S. 82, 88 (1985). Thus, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" *Heath*, 474 U.S. at 88 (quoting *United States v. Lanza*, 260 U.S. 377, 382 (1922)). The imperative determination in applying the dual sovereignty doctrine is "whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns," which

"turns on whether the two entities draw their authority to punish from distinct sources of power." *Heath*, 474 U.S. at 88 (citations omitted). "In those instances where the Court has found the dual sovereignty doctrine inapplicable, it has done so because the two prosecuting entities did not derive their powers to prosecute from independent sources of authority." *Id.* at 90. With regard to the states and the federal government, the Supreme Court has held that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Lanza*, 260 U.S. at 382.

Defendant's dual-sovereignty argument fails for two reasons. First, as discussed above, the preliminary injunction order arguably did not impose a criminal punishment because that provision, and the order as a whole, was arguably equitable in nature and intended to preserve the status quo. Second, even if Defendant can show that the provision turned the private civil action into a state-sponsored criminal prosecution and that both government actors derive their authority from the Thirteenth Amendment, Defendant does not make the requisite showing as to why the state court proceeding was a sham prosecution, as required by *Bartkus v. Illinois*, 359 U.S. 121 (1959). *Bartkus* stands for the proposition that a state or federal government cannot sidestep the constraints of the Double Jeopardy Clause through a "sham" prosecution by an ostensibly different sovereign. 359 U.S. at 122-24. The record clearly demonstrates that Defendant "has not made the startling showing" that the state court civil action between two non-governmental parties was "merely a tool" of the State of Ohio in undertaking this prosecution, "somehow ceding its sovereign authority to prosecute and acting only because the State told it to do so." *United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008) (citing *Bartkus*, 359 U.S. at 123).

The Supreme Court and this Court have expressly held that cooperation between state and federal authorities for prosecutions of the same defendant for similar conduct does not offend the Double Jeopardy Clause. *Djoumessi*, 538 F.3d at 550-51 (quoting *Bartkus*, 359 U.S. at 123-24 (explaining that, although the record "establishes . . . that federal officials acted in cooperation with state authorities, as is the conventional practice between the two sets of prosecutors throughout the country, . . . [i]t does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution")). Furthermore, the *Bartkus* sham-prosecution exception is a narrow one, and it is fair to wonder whether *Bartkus* is effectively limited to its facts. *Djoumessi*, 538 F.3d at 550 (noting that since *Bartkus* was decided in 1959, this Circuit has never ruled that a prosecution violated double jeopardy protections under *Bartkus'* sham prosecution theory) (citations and internal quotation marks omitted).

I therefore agree with the majority that the district court's order denying Defendant's motion to dismiss must be affirmed.